IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

                              :
LAURA MCFEELEY, et al.,
                              :

    v.                        :   Civil Action No. DKC 12-1019

                              :

JACKSON STREET ENTERTAINMENT,
LLC, et al.                   :

**MEMORANDUM OPINION**

Presently pending and ready for review in this Fair Labor Standards Act ("FLSA") case is the motion to dismiss Defendants' counterclaims filed by Plaintiffs Laura McFeeley and Danielle Everett (ECF No. 5). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part.

**I.   Background[1]**

Plaintiffs Laura McFeeley and Danielle Everett are exotic dancers who have sued the exotic dance clubs, Fuego's Exotic Dance Club and Club Extasy Exotic Dance Club, and the individuals and entities that operate both of them: Jackson Street Entertainment, LLC, Risque LLC, Quantum Entertainment

---

[1] Unless otherwise noted, the facts outlined here are construed in the light most favorable to Defendants, the nonmoving parties.

Group, LLC, Nico Enterprises, Inc., XTC Entertainment, and Uwa Offiah, for violations of the FLSA and the Maryland Wage and Hour Law ("MWHL").  (ECF No. 3).

McFeeley danced at Fuego from March 1, 2009 to March 15, 2012.  Everett danced at Fuego and Club Extasy from May 1, 2010 through October 31, 2011.  In their counterclaims, Defendants allege that Plaintiffs danced as independent contractors, pursuant to contracts they signed with Defendants.  Under the terms of these contracts, Plaintiffs were paid for dances directly by the clubs' patrons.  Plaintiffs paid a nightly fee ranging from $20-60 to the clubs in exchange for access to the clubs' facilities and services.  At the clubs, dancers performed on the main stage and had the opportunity to provide table side dances and dances in VIP rooms.  Dancers paid the clubs a fee for each private or semi-private dance they performed, and the clubs set a standard, minimum price that the dancers were required to charge patrons for these dances.  During Plaintiffs' employment, dancers were required to charge $10 for tableside dances, $15 for dances in the VIP II area, and $30 for a dance in the VIP I area.  They were free to set any price they desire for a private or semi-private dance, so long as it met the club's set minimum fee.  Dancers kept all of the proceeds of tableside and VIP II area dances, and were required to pay the clubs $10 per dance in the VIP I area.  Dancers also regularly

received gratuities above the dance fees.   Defendants aver that based on dance fees and tips, all dancers, including Plaintiffs, were compensated well beyond the federal minimum wage for their work.

### A.   Procedural Background

On April 3, 2012, Plaintiffs filed a complaint against Defendants, alleging three counts:   violation of the FLSA for failure to pay minimum wage; violation of the FLSA for failure to pay overtime; and violation of the MWHL for failure to pay minimum wage and overtime.   (ECF No. 1).   On April 18, before Defendants filed an answer, Plaintiffs augmented their allegations in an amended complaint.   (ECF No. 3).   Defendants subsequently filed an answer and counterclaims.   (ECF No. 4). Defendants' counterclaims include:   breach of contract, unjust enrichment, quantum meruit, accounting, conversion, and fraud. Plaintiffs moved to dismiss the counterclaims, arguing that they are in essence claims for indemnification and constitute a waiver of Plaintiffs' FLSA rights, both of which are not permitted.   (ECF No. 5) Defendants opposed, and Plaintiffs replied.   (ECF Nos. 6-7).[2]

---

[2] Both the counterclaims and the arguments for dismissal mirror those in *Ruffin v. Entm't of the E. Panhandle*, 845 F.Supp.2d 762 (N.D.W.Va. 2011).

## II.  Standard of Review

Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A counter-complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3, (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a counter-complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the counter-claimant, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1979). Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at

4

678, or conclusory factual allegations devoid of any reference
to actual events, *United Black Firefighters v. Hirst*, 604 F.2d
844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588
F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts
do not permit the court to infer more than the mere possibility
of misconduct, the complaint has alleged, but it has not
'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*,
556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus,
"[d]etermining whether a [counter-complaint] states a plausible
claim for relief will . . . be a context-specific task that
requires the reviewing court to draw on its judicial experience
and common sense." *Id*.

## III. Analysis

### A.   Breach of Contract/Unjust Enrichment

In their counterclaims for breach of contract and unjust
enrichment, Defendants allege that Plaintiffs entered into
contracts and conducted themselves as though related to
Defendants as independent contractors, not employees.  By filing
this lawsuit and retroactively claiming that they were employees
(and, by extension, not properly compensated), Plaintiffs
allegedly breached their contracts.  As damages for this breach,
Defendants seek the return of fees related to all private and
semi-private dances performed by Plaintiffs.

Alternatively, Defendants allege that as a result of Plaintiffs acting like independent contractors, Defendants failed to collect revenues generated by Plaintiffs, as they would have done had Plaintiffs been employees. Should Plaintiffs prevail on their FLSA claims, Defendants assert that Plaintiffs will be unjustly enriched at Defendants' expense. Therefore, they seek restitution and an accounting of all fees collected by Plaintiffs.

Plaintiffs present three grounds for dismissal of the counterclaims: first, that they are improper claims for indemnification; second, that they are based on an unlawful waiver of Plaintiffs' FLSA rights; and third, that Defendants have not alleged that the fees charged for dances are "service charges" rather than "tips."

### 1.  Improper Claims for Indemnification

Plaintiffs first argue that Defendants' counterclaims are basically claims for indemnification, against Defendants' potential FLSA liability, which are not allowed under the FLSA. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. 1992) ("In effect, Food Lion sought to indemnify itself against [the manager] for its own violation of the FLSA, which . . . is something the FLSA simply will not allow."). In *Lyle*, Food Lion counterclaimed that its employee breached his contract with and fiduciary duty to Food Lion by violating and allowing an

employee to violate its prohibition of off-the-clock work.   *Id.* Unlike in *Lyle*, Defendants here do not attribute any fault in any potential FLSA violation to Plaintiffs.   Rather, they seek either the return of the alleged dance service charges, or an offset against potential FLSA liability based upon Plaintiffs' retention of those fees.   Defendants counterclaims do not improperly seek indemnification.

> **2.   Unlawful Waiver of FLSA Rights**

Plaintiffs also argue that Defendants' counterclaims rely on an unlawful waiver of their FLSA rights:   that is, that Plaintiffs could not have lawfully entered into a contract with Defendants to waive the FLSA's minimum wage protections.   The right to a minimum wage under the [FLSA] cannot be waived by agreement between the employer and his employee."   *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1197 (5th Cir. 1972) (citing *Brooklyn Bank v. O'Neil*, 324 U.S. 697 (1945)).   Here, Defendants allege that, pursuant to the terms of their contracts with the clubs, Plaintiffs and other dancers received greater compensation than they would have earned at a rate of minimum wage.   Therefore, as alleged, the parties' contract does not constitute an unlawful waiver of Plaintiffs' FLSA rights.

### 3.   Tips Mischaracterized as Service Fees

Finally, Plaintiffs argue that Defendants have insufficiently pled that the dance fees were service charges, which may be offset against Defendants' minimum wage liability, rather than tips.

> An employer may offset the full amount of a service charge against its minimum wage liability, but may offset up to fifty per cent of all tips received if:  (i) the employer has informed the employees of this tip credit provision; and (ii) tipped employees retain all tips received except for those tips included in a tipping pool among employees who customarily receive tips.

*Reich v. ABC/York-Estes Corp.*, No. 91-C-6265, 1997 WL 264379, at *4, (N.D.Ill. May 9, 1997) (citing 29 U.S.C. § 203(m)).   Tip is defined by the implementing regulations for § 203(m) thus:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him.  It is to be distinguished from payment of a charge, if any, made for the service.  Whether a tip is to be given, and its amounts, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity.  In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer.

*Id.* at *5 (quoting 29 C.F.R. § 531.52).   "The regulations also provide examples of compensation which is and which is not considered to be a 'tip' and, in doing so, distinguishes between

8

a 'service charge' and a 'tip.'"   *Id.* (citing 29 C.F.R. 531.55(a) and (b)).   The regulations further explain that:

> (a) A compulsory charge for service, such as 10 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to his employees, cannot be counted as a tip received in applying the provision of [29 U.S.C. §§ 203(m) and (t)] . . . .
> (b) As stated above, service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the Act.   However, where such sums are distributed by the employer to his employees, they may be used in their entirety to satisfy the monetary requirements of the Act.

*Id.* (quoting 29 C.F.R. § 531.55(a) and (b)) (emphasis in original).   Interpreting the regulations, the court in *Reich* held that "an employer must include payments in its records as gross receipts as a prerequisite to 'service charge' classification under the FLSA." *Id.* at *5.

Because Defendants allege that they set the minimum prices that dancers could charge for dances, and that they received a portion of those fees, they have adequately pled that the fees constituted service charges, which may be offset against Defendants' minimum wage liability, in order to survive Plaintiffs' motion to dismiss.

### 4.   Accounting

Defendants also seek an accounting of the dance fees that Plaintiffs collected and did not turn over to Defendants, as well as all tips collected by Plaintiffs.  Plaintiffs argue that an accounting is not warranted.

"An accounting is unnecessary where discovery is sufficient to determine the amounts at issue." *Doe v. Cin-Lan, Inc.*, 2010 WL 726710, at *8 (E.D.Mich. Feb. 24, 2010) (quoting *King v. Bank of Am. Corp.*, 2009 WL 2960425, at *2 (E.D.Mich. Sept. 11, 2009)).  Defendants make no arguments to show why ordinary discovery devices will be insufficient to establish the amounts of Plaintiffs' dance fees and tips and an accounting is necessary.  Therefore, Defendants have failed to allege a plausible claim for an accounting.

### B.   Conversion

In their counterclaim for conversion, Defendants allege that by keeping any portion of the dance performance fees, Plaintiffs have converted Defendants' property to their own use. Plaintiffs argue that Defendants freely permitted Plaintiffs to retain the fees in question, and never considered them to be Defendants' property.  In Maryland, "[a] conversion may consist of a wrongful, tortious or unlawful taking of property from the possession of another . . . without his consent or approbation, either express or implied." *Darcars Motors of Silver Spring,*

*Inc. v. Borzym*, 379 Md. 249, 262 (2004) (quoting *Wallace v. Lechman & Johnson, Inc.*, 354 Md. 622, 633 (1999)). Defendants do not respond to Plaintiffs' arguments on this issue, and at the time Plaintiffs collected service fees, Defendants admit that they allowed Plaintiffs to retain them. Therefore, Defendants cannot state a plausible claim for conversion.

### C.   Fraud

Finally, Defendants allege that Plaintiffs committed fraud by misrepresenting themselves as independent contractors and not employees. They further allege that Plaintiffs intended to receive the benefits of independent-contractor status before repudiating that status and claiming in this lawsuit to be employees. Finally, Defendants allege that they relied on Plaintiffs' representations to their detriment.

At base, these allegations suggest that Plaintiffs share fault with Defendants for any potential FLSA violations because they misrepresented their status to Defendants. Ultimately, Plaintiffs' status depends on Defendants' treatment of Plaintiffs. Therefore, Defendants' counterclaim for fraud seeks improper indemnification for Defendants' potential violation of the FLSA, and will be dismissed. *See Lyle*, 954 F.2d at 987.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss Defendants' counterclaims filed by Plaintiffs McFeeley and

Everett will be granted in part and denied in part.  A separate

order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge