IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LAURA MCFEELEY, et al.,  :

   v.  :  Civil Action No. DKC 12-1019

JACKSON STREET ENTERTAINMENT,  :
LLC, et al.  :

**MEMORANDUM OPINION**

Presently pending and ready for review this Fair Labor Standards Act ("FLSA") case is the motion for conditional certification of a collective action and facilitation of notice filed by Plaintiffs Laura McFeeley and Danielle Everett. (ECF No. 8). The issues have been fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiffs' motion for conditional certification of a collective action and facilitation of notice will be granted.

**I.   Background**

   **A.   Factual Background**

Plaintiffs Laura McFeeley and Danielle Everett are exotic dancers who have sued the exotic dance clubs, Fuego's Exotic Dance Club ("Fuego") and Club Extasy Exotic Dance Club ("Club Extasy"), and the individuals and entities that operate both of them: Jackson Street Entertainment, LLC, Risque LLC, Quantum Entertainment Group, LLC, Nico Enterprises, Inc., XTC

Entertainment, and Uwa Offiah, for violations of the FLSA and the Maryland Wage and Hour Law ("MWHL").  (ECF No. 3).

McFeeley danced at Fuego, and occasionally at Club Extasy, from March 1, 2009 to March 15, 2012.  Everett danced at Fuego and Club Extasy from May 1, 2010 through October 31, 2011.  From 2009 through October 2011, McFeeley usually worked six nights a week, and fifty-four hours a week.  From November 2011 to March 2012, she worked two nights a week, averaging twenty hours a week.  Everett typically worked three nights a week, totaling forty-eight hours a week.  During the three years that Plaintiffs worked for Defendants, Defendants employed approximately one hundred exotic dancers.

Plaintiffs, and all dancers employed by Defendants at both clubs, signed contracts with Defendants that purported to classify them as independent contractors.  These contracts provided, and Defendants repeatedly told Plaintiffs and other dancers, that they were not entitled to wages from Defendants, and that they would only be paid by tips received directly from customers.  Plaintiffs aver that, despite their facial independent contractor status, Defendants controlled every aspect of dancers' job duties, including their schedules, and disciplined and fined the dancers.

All dancers at both clubs, including Plaintiffs, paid a nightly fee of approximately $50 to the clubs in exchange for

access to the clubs' facilities and services. If dancers wanted to use the restroom, they were required to pay the Defendants a $2 fee. Access to the dressing room was provided to them for a fee of $10. Private and semi-private dances carried a fee of $10. Plaintiffs allege that during a typical shift, dancers paid Defendants an average of $100 or more in fees. Plaintiffs allege that their average net hourly take home pay amounted to an out of pocket expense of negative twelve dollars (-$12) per hour. (ECF No. 3 at 9). Plaintiffs allege that Defendants, as employers of all 100 exotic dancers, completely failed to pay them any wage or overtime pay.

    B.    **Procedural Background**

On April 3, 2012, Plaintiffs filed a complaint against Defendants, alleging three counts: violation of the FLSA for failure to pay minimum wage; violation of the FLSA for failure to pay overtime; and violation of the MWHL for failure to pay minimum wage and overtime. (ECF No. 1). On April 18, before Defendants filed an answer, Plaintiffs augmented their allegations in an amended complaint. (ECF No. 3). Defendants subsequently filed an answer and counterclaims. (ECF No. 4).

On July 17, 2012, Plaintiffs moved for conditional certification of a collective action for all individuals who worked at either Fuego's Exotic Dance Club or Club Extasy Exotic Dance Club as an exotic dancer at any time since April 1, 2009,

who have not been properly compensated for their overtime work or have not been paid a minimum wage for all hours worked. (ECF No. 8, at 13). They also requested facilitation of notice to potential opt-in plaintiffs. Defendants opposed this motion (ECF No. 10), and Plaintiffs have filed a reply (ECF No. 11).

## II. Motion for Conditional Certification and for Court-Facilitated Notice

"Under the FLSA, plaintiffs may maintain a collective action against their employer for violations under the act pursuant to 29 U.S.C. § 216(b)." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762, 771 (D.Md. 2008). Section 216(b) provides, in relevant part, as follows:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

"This provision establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros*, 532 F.Supp.2d at 771 (citing *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D.Md. 2000)).

When deciding whether to certify a collective action pursuant to the FLSA, courts generally follow a two-stage

process. *Syrja v. Westat, Inc.*, 756 F.Supp.2d 682, 686 (D.Md. 2010). In the first stage, commonly referred to as the notice stage, the court makes a "threshold determination of 'whether the plaintiffs have demonstrated that potential class members are 'similarly situated,' such that court-facilitated notice to the putative class members would be appropriate.'" *Id.* (quoting *Camper*, 200 F.R.D. at 519). In the second stage, following the close of discovery, the court conducts a "more stringent inquiry" to determine whether the plaintiffs are in fact "similarly situated," as required by § 216(b). *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D.Md. 2007). At this later stage, referred to as the decertification stage, the court makes a final decision about the propriety of proceeding as a collective action. *Syrja*, 756 F.Supp.2d at 686 (quoting *Rawls*, 244 F.R.D. at 300). Plaintiffs here have moved for conditional certification of a collective action, and they have requested court-facilitated notice to potential opt-in plaintiffs.

> **A. Conditional Certification Is Appropriate Because Plaintiffs Have Made a "Modest Factual Showing" that Exotic Dancers Employed by Defendants at Fuego Exotic Dance Club and Extasy Exotic Dance Club Are "Similarly Situated"**

"Determinations of the appropriateness of conditional collective action certification . . . are left to the court's discretion." *Syrja*, 756 F.Supp.2d at 686; *see also Hoffmann-La*

*Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). The threshold issue in determining whether to exercise such discretion is whether Plaintiffs have demonstrated that potential opt-in plaintiffs are "similarly situated." *Camper*, 200 F.R.D. at 519 (quoting 29 U.S.C. § 216(b)). "'Similarly situated' [does] not mean 'identical.'" *Bouthner v. Cleveland Constr., Inc.*, No. RDB-11-0244, 2012 WL 738578, at *4 (D.Md. Mar. 5, 2012) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001)). Rather, a group of potential FLSA plaintiffs is "similarly situated" if its members can demonstrate that they were victims of a common policy, scheme, or plan that violated the law. *Mancia v. Mayflower Textile Servs. Co.*, No. CCB-08-0273, 2008 WL 4735344, at *3 (D.Md. Oct. 14, 2008); *Quinteros*, 532 F.Supp.2d at 772. To satisfy this standard, plaintiffs generally need only make a "relatively modest factual showing" that such a common policy, scheme, or plan exists. *Marroquin v. Canales*, 236 F.R.D. 257, 259 (D.Md. 2006).

To meet this burden and demonstrate that potential class members are "similarly situated," Plaintiffs must set forth more than "vague allegations" with "meager factual support" regarding a common policy to violate the FLSA. *D'Anna, v. M/A COM, Inc.*, 903 F.Supp. 889, 894 (D.Md. 1995); *Bouthner*, 2012 WL 738578, at *4. Their evidence need not, however, enable the court to

determine conclusively whether a class of "similarly situated" plaintiffs exists, *Bouthner*, 2012 WL 738578, at *4, and it need not include evidence that the company has a formal policy of refusing to pay overtime, *Quinteros*, 756 F.Supp.2d at 772. Plaintiffs may rely on "[a]ffidavits or other means," such as declarations and deposition testimony, to make the required showing. *Williams v. Long*, 585 F.Supp.2d 679, 684-85 (D.Md. 2008); *Essame v. SSC Laurel Operating Co.*, --- F.Supp.2d ---, 2012 WL 762895, at *3 (D.Md. Mar. 12, 2012).

Here, through McFeeley's declaration, Plaintiffs make a "modest factual showing" that they are "similarly situated" to other exotic dancers who have worked at Fuego or Club Extasy since April 1, 2009, but have not received appropriate compensation, including overtime pay. First, McFeeley submitted a declaration attesting that she worked at both Fuego's and Club Extasy beginning in March 2009, and that she and other exotic dancers were required to sign a contract certifying that they were to be classified as independent contractors, but that Defendants disciplined them, dictated their schedules, and otherwise treated them like employees. (ECF No. 8-2). Second, McFeeley alleges that all dancers, at both clubs, signed contracts providing that they would not be paid any wages or provided overtime pay, but that all of their compensation would come from tips paid directly by customers. Third, McFeeley

declares that all Fuego and Club Extasy dancers were required to pay Defendants a series of fines and fees to perform their job duties. Fourth, McFeeley asserts that Defendants repeatedly told all exotic dancers that they would not be paid a wage or overtime pay. Finally, McFeeley avers that all dancers were not fully compensated by the Defendants for all hours worked, and that she has personal knowledge of other exotic dancers who also were not paid wages or overtime. Taken together, these facts attested to in McFeeley's declaration establish the "modest factual showing" necessary for conditional certification of a class of exotic dancers who were employed at Defendants' Fuego Exotic Dance Club or Club Extasy Exotic Dance Club since April 1, 2009.

Defendants contend that because McFeeley only "occasionally" worked at Club Extasy, she does not have sufficient knowledge of that club's employment practices and policies. (ECF No. 10 at 3). They further argue that her assertions are too vague to form the basis of conditional certification. (*Id.* at 5). McFeeley's declaration of Club Extasy's employment practices is based on her alleged personal knowledge from having worked both there and at Defendants' Fuego dance club. This is a sufficient, concrete factual basis to show that other similarly situated dancers are employed by Defendants there. *See Faust v. Comcast Cable Comms. Mgmt.*,

*LLC.*, No. WMN-10-2336, 2011 WL 5244421, at *4 (D.Md. Nov. 1, 2011) (limiting conditional certification of FLSA class to one of eight Maryland call centers because even though employees at all call centers perform the same tasks and are subject to the same company policies, "Plaintiffs have failed to provide any concrete evidence" demonstrating that employees at other facilities had been victims of the same illegal policies); *Camper*, 200 F.R.D. at 520-21 (holding that although plaintiffs preliminarily established the existence of a company-wide policy concerning use of time clocks, notice to the potential class was warranted with respect to only the one facility where the plaintiffs made a factual showing). Unlike in *Faust* and *Camper*, Plaintiffs make the required evidentiary showing of FLSA violations at both exotic dance clubs, based on McFeeley's personal experience working in both locations.

Defendants next argue that the court should deny Plaintiffs' request for conditional certification because McFeeley's declaration is not credible. They argue that she does not sufficiently establish the basis of her personal knowledge, making her declaration an inappropriate foundation on which to conditionally certify a class. (ECF No. 10, at 4-5). Personal knowledge of facts may be inferred from Plaintiff's statements of first-hand experience and her observations; she does not need to declare specifically every detail undergirding

9

her personal knowledge. *See Sjoblom v. Charter Commc'ns, LLC*, 571 F.Supp.2d 961, 968-69 (W.D.Wisc. 2008) (refusing to discard plaintiffs' evidence for lack of personal knowledge where declarants did not actually know whether coworkers were paid for overtime work because this fact could be inferred from declarants' observations and personal experience of not being paid for overtime); *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 1991) (concluding that personal knowledge includes reasonable inferences grounded in observation or first-hand experience). Thus, for purposes of conditional certification, McFeeley's assertions of personal knowledge seem to be grounded in reasonable inferences based on her observations and experience.

Even if the unstated basis of her knowledge did cast some doubt on McFeeley's credibility, conditional certification would not be denied on that basis alone because "credibility determinations are usually inappropriate for the question of conditional certification." *Essame*, 2012 WL 762895, at *3 (citing *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F.Supp.2d 200, 205 (N.D.N.Y. 2009)).

Conditional certification pursuant to § 216(b) is, therefore, warranted for the class of all individuals who worked at either Fuego's Exotic Dance Club or Club Extasy Exotic Dance Club as an exotic dancer at any time since April 1, 2009, who

10

have not been properly compensated for their overtime work or have not been paid a minimum wage for all hours worked.

### B.  Court Supervised Notice to Potential Opt-In Plaintiffs is Proper

Because Plaintiffs have made a preliminary showing that exotic dancers working at Fuego and Club Extasy are "similarly situated," notice of this action will be provided to exotic dancers who currently work, or have worked since April 1, 2009, at those clubs.  Plaintiffs have submitted a proposed notice form.  (ECF No. 8-3).  Defendants suggested comments to the proposed notice form.  (ECF No. 10, at 8).

The district court has broad discretion regarding the "details" of the notice sent to potential opt-in plaintiffs. *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006) (citing *Hoffmann-La Roche*, 493 U.S. at 171).  "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'"  *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F.Supp.2d 445, 450 (S.D.N.Y. 2011) (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 323 (S.D.N.Y. 2007)).

11

Defendants suggest that Plaintiffs' notice fails to assert Defendants' position in the lawsuit, including their potential liability for Defendants' counterclaims.[1] Defendants will not be afforded the opportunity to notify potential plaintiffs that they might be responsible for counterclaims or other costs. *See Whitehorn*, 767 F.Supp.2d at 451 (denying defendants' request to notify potential plaintiffs of potential liability on counterclaims); *Guzman v. VLM, Inc.*, No. 07 Civ. 1126, 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007) (rejecting notice of potential counterclaim liability because it "may have an *in terrorem* effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree").

The parties do not comment on the length of the notice period, and leave this to the court's discretion. Notice periods may vary, but numerous courts around the country have authorized ninety-day opt-in periods for collective actions. *See, e.g., Wass*, 2011 WL 1118774, at *11 (denying the defendant's request to shorten the opt-in period to fewer than

---

[1] Plaintiffs have also requested that the court appoint their counsel as counsel for this collective action. Defendants have not opposed this request. Thus, any potential opt-in plaintiff who does not enter an appearance through his or her own counsel, or indicate a desire to represent himself or herself, will be represented by Plaintiffs' counsel.

ninety days); *Calderon v. Geico Gen. Ins. Co.*, No. RWT 10cv1958, 2011 WL 98197, at *2, 8-9 (D.Md. Jan. 12, 2011) (authorizing a ninety-day notice period); *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 68-69 (E.D.Pa. 2009) (finding a ninety-day opt-in period to be reasonable). Plaintiffs may, therefore, notify other potential plaintiffs of this action by first-class mail using the court-approved notice appended to this memorandum opinion.[2]

**III. Conclusion**

For the foregoing reasons, Plaintiffs' motion for conditional certification and for court-facilitated notice will be granted. A separate Order will follow.

                                    /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge

---

[2] To effectuate this notice, Defendants will be required to produce, to the extent possible, the full names and last known home addresses of potential opt-in plaintiffs within fourteen days of the issuance of the accompanying Order. Defendants will not, however, be required to provide phone numbers for potential opt-in plaintiffs at this time because Plaintiffs have made no showing of any "special need" for the disclosure of this information. *See Calderon*, 2011 WL 98197, at *9 ("[A]bsent a showing by plaintiffs of 'special need for disclosure of class members' telephone numbers,' ordering such disclosure is not appropriate." (quoting *Arevalo v. D.J.'s Underground*, No. DKC 09-3199, 2010 WL 4026112, at *2 (D.Md. Oct. 13, 2010))).