IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LAURA MCFEELEY, ET AL                    :

                                         :

      v.                                 :  Civil Action No. DKC 12-1019

                                         :

JACKSON STREET ENTERTAINMENT,
LLC, ET AL                               :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Fair Labor Standards Act ("FLSA") collective action is Defendants' motion for judgment notwithstanding the verdict, or in the alternative, for a new trial.  (ECF No. 94).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, Defendants' motion will be denied.

**I.  Background[1]**

After the court granted Plaintiffs' motion for partial summary judgment, the remaining issues came on for trial before a jury on February 3-5, 2015.  Plaintiffs' claims that proceeded to trial (counts I to III) were based on Defendants' alleged violations of the Fair Labor Standards Act ("FLSA") and the

---

[1] This memorandum opinion includes only the facts relevant to the disposition of the presently pending motion.  A full procedural history and factual description of the dispute between the parties can be found in previous opinions.  (ECF Nos. 12, 14, 53, 56, and 92).

Maryland Wage and Hour Law ("MWHL") for failing to pay Plaintiffs minimum wage and overtime.   Under the FLSA and MWHL, it was determined at summary judgment that Plaintiffs were employees of Defendants and Defendants were employers, but there was a genuine dispute over whether Plaintiffs performed work for which they were improperly compensated, and this issue was reserved for trial.

At trial, following the close of Plaintiffs' case and following the close of all evidence, Defendants moved for judgment as a matter of law pursuant to Federal Rule of Procedure 50(a).   The undersigned denied this motion finding that there was evidence upon which a reasonable jury could find for Plaintiffs.

After hearing all testimony at trial, the jury was given instructions, part of which provided guidance on how to assess damages for each Plaintiff:

> For each plaintiff, you will determine the number of weeks she worked during the applicable time frame, the schedule she kept, the number of hours she worked each week, and the weekly amount she had to pay to Defendants.   Then you will calculate the amount due, by multiplying the weeks worked by the hours worked each week and multiplying the minimum wage of $7.25 for regular hours and $10.88 for any hours in excess of 40 per week.   You well then add the weekly amount each paid to Defendants to reach a total amount due.

> As to each plaintiff, you will also be asked
> to determine the portion of the total amount
> that is due for work after a certain date.
> The court needs you to make that
> determination in order to finalize any award
> in this case.

Defendants objected to the jury instructions on the grounds that the purpose of the FLSA was not included in the instructions and the verdict sheet was not detailed enough. Defendants requested *inter alia* that the verdict sheet require the jury to make more specific findings regarding:  whether each Plaintiff had proven by a preponderance of the evidence that she had performed work for Defendants; the time period that each Plaintiff performed work for Defendants; and the hours per week that each Plaintiff worked for Defendants in each calendar year. Plaintiffs argued that a more detailed verdict sheet would not be helpful to the jury and the additions suggested by Defendants were superfluous.  The undersigned agreed.

After deliberating for a day and a half, the jury returned verdicts as to the amount of damages to which each Plaintiff was entitled under the MWHL based on a three year statute of limitations:[2]

---

[2]  As noted in the prior opinion, Plaintiffs established Defendants' violation of the FLSA and MWHL, but could only recover damages under one of these statutes for unpaid wages because the relief they provide is duplicative.  Plaintiffs chose to seek damages under the MWHL because its statute of limitations is three years, whereas the FLSA statute of

Laura McFeeley:  $68,360

Danielle Everett:  $10,764

Crystal Nelson:  $34,190

Dannielle Arlean McKay:  $17,541.50

Jenny Garcia:  $10,976

Patrice Howell:  $55,125

The jury also determined the amount of unpaid wages that were due to Plaintiffs for work performed within the two-year look-back period for the FLSA in order for the court to award liquidated damages.  The issue of liquidated damages was tried to the court, but a jury identification of damages within a specified period of time was necessary.  Based on Defendants' testimony regarding its efforts to comply with the FLSA, the court found that Defendants did not act in good faith to comply with the FLSA prior to September 2011, but following September 2011 Defendants acted in good faith because they consulted an attorney regarding their relationship with the clubs' dancers. In the February 10, 2015 memorandum opinion and judgment, Plaintiffs were awarded the following amount of liquidated damages, which were based on the jury's determination of damages that accrued as of and after the FLSA's two year look-back date,

_____

limitations is two years unless plaintiffs prove a defendant's violation is willful.

which were reduced to account for Defendants' good faith
following September 2011:

    Laura McFeeley:  $35,000

    Danielle Everett:  $7,000

    Crystal Nelson:  $8,000

    Dannielle Arlean McKay:  $520

    Jenny Garcia:  $9,400

    Patrice Howell:  $8,400

Ms. McFeeley and Ms. Nelson's damages were reduced by $1,640 and
$640, respectively, based on offset amounts the parties had
stipulated to prior to trial.

## II.  Analysis

### A.   Judgment Notwithstanding the Verdict

On February 20, 2015, Defendants moved for judgment
notwithstanding the verdict ("JNOV") under Federal Rule of Civil
Procedure 50(b) as to Plaintiffs Danielle Everett, Crystal
Nelson, Laura McFeeley, Jenny Garcia, and Patrice Howell. (ECF
No. 94).  Federal Rule of Civil Procedure 50 governs the
requirements for making both initial and renewed motions for
judgment as a matter of law.  Rule 50(b) provides that a party
may file a renewed motion for judgment, also known as JNOV, as a
matter of law within twenty-eight days after the entry of
judgment.  A court may grant JNOV if "there is no legally
sufficient evidentiary basis for a reasonable jury to find in

favor of that party on that issue." Fed.R.Civ.P. 50(a).   In
making this determination, "the judge is not to weigh the
evidence or appraise the credibility of the witnesses, but must
view the evidence in the light most favorable to the non-moving
party and draw legitimate inferences in its favor." *Anheuser-*
*Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir.
1992) (citations omitted).

Defendants argue that JNOV is warranted as to Ms. Everett
because the only explanation for the amount of damages she was
awarded is that the jury did not recall that Ms. Everett
testified to working intermittently at four other exotic dance
clubs while working at Defendants' clubs.   Defendants also argue
that JNOV should be granted as to Ms. Nelson because the damages
she was awarded are not warranted based on her testimony that
she took several breaks in her employment with Defendants and
that she worked at a second exotic dance club during some of the
period she worked at Defendants' clubs.   Finally, Defendants
contend that the jury's verdicts as to Plaintiffs McFeeley,
Garcia, and Howell were not reasonably supported by their
testimony because none of these Plaintiffs gave a reasonably
certain start date, and each of them had day jobs and minor
children to care for during the time they worked for Defendants.

Plaintiffs respond that Defendants' motion for JNOV
attempts to "poke holes" in Plaintiffs' testimony, just as

Defendants attempted to do at trial.   (ECF No. 97, at 2-3).
According to Plaintiffs, Defendants arguments for JNOV are
centered on the credibility of Plaintiffs' testimony, which is
not an appropriate ground for granting JNOV.  Plaintiffs contend
that in reviewing a motion for JNOV the court cannot "weigh the
evidence or assess the credibility of witnesses" nor is it free
to "substitute its judgment of the facts for that of the jury."
(*Id.*).  Plaintiffs add that based on the jury's verdicts, which
did not award the full damages amounts requested by Plaintiffs,
it is clear that the jury considered all of the evidence it was
presented.

When bringing suit under the FLSA, the employee has the
initial burden of proving that she "performed work for which
[she] was improperly compensated and [] produc[ing] sufficient
evidence to show the amount and extent of that work as a matter
of just and reasonable inference."  *Anderson v. Mt. Clemens
Pottery Co.,* 328 U.S. 680, 687 (1946).  The burden then shifts
to the employer to rebut the *prima facie* case by "com[ing]
forward with evidence of the precise amount of work performed or
with evidence to negative the reasonableness of the inference to
be drawn from the employee's evidence."  *Id.* at 687-88.  If the
employer fails to rebut the inference, the employee is entitled
to damages even though her estimate of wages due may only be
approximate.  The FLSA places the burden on the employer to keep

proper records of employees' wages owed, hours worked, and other conditions and practices of employment. *Id.* at 687. Accordingly, when employment records are inaccurate, inadequate, or, as in this case, nonexistent, the court "is not to penalize the employee by denying [her] recovery on the ground that [she] is unable to prove the precise extent of uncompensated work." *Donavan v. Kentwood Dev. Co., Inc.,* 549 F.Supp. 480, 485 (D.Md. 1982); *see also Anderson,* 328 U.S. at 688 ("[T]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [it] kept records in accordance with the requirements of . . . the [FLSA].").

Here, Defendants failed to keep any records of Plaintiffs' days and hours worked or the dates when Plaintiffs commenced and stopped performing work at Defendants' clubs. Therefore, in order to estimate the wages due to each Plaintiff, Plaintiffs testified at trial to their best recollection of their: approximate start and end dates of employment with Defendants, general work schedule at each club, approximate number of hours worked per week, total number of weeks worked for Defendants, and the average amount of tip-in fees they paid to Defendants per week. Uwa Offiah, owner of the exotic dance clubs Fuego and Extasy, and Doguy Kamara, Operations Manager at the clubs, testified on behalf of Defendants concerning, *inter alia*, the

clubs' hours of operation, dancers' normal arrival times at the clubs, and the tip-in fee amounts the clubs charged dancers. Although Defendants had no employment records and their witnesses had no personal recollection of the hours worked by Plaintiffs, Defendants attempted to rebut the reasonableness of Plaintiffs' damages estimates by challenging Plaintiffs' recollections of their hours works and start and end dates. Defendants also tried to discredit various Plaintiffs' testimony by pointing out that while working at the clubs, Plaintiffs had other jobs, small children, or other obligations that consumed their time.  In addition, Defendants pointed out that Plaintiffs often worked at two or more exotic dance clubs during the same time frame.  Defendants also cross-examined some Plaintiffs, including Ms. Everett, about their involvement in FLSA collectives against other exotic dance clubs.  In particular, Defendants questioned Plaintiffs regarding the hours they claimed to have worked at these other clubs in their other lawsuits, which in some instances overlapped with the timeframes they had testified to working for Defendants' clubs.

Following the close of all evidence, the jury was instructed appropriately on the applicable legal principles at issue in the case, how to evaluate the evidence presented by the parties, and the method for calculating damages.  Of particular relevance in this case, the jury was instructed on the factors

to consider when evaluating the credibility of a witness.   In addition, the jury was instructed on the applicable law and the background of the case, including that Plaintiffs were employees of Defendants who were entitled to minimum wage and overtime pay.   The jury was informed that Defendants had conceded that they did not pay Plaintiffs wages during the time that Plaintiffs worked for Defendants.   The jury was also instructed that each Plaintiff was required to prove by a preponderance of the evidence that she worked hours for which she was not paid minimum wage.   Finally, as discussed above, the jury was given the formula for computing the wages owed to each Plaintiff.

Based on the testimony adduced at trial and in accordance with instructions provided by the undersigned, the jury determined that every Plaintiff had established by a preponderance of the evidence that she performed work for which she was owed compensation by Defendants.   For all but one Plaintiff, the jury reduced the amounts that Plaintiffs asserted were owed to them by Defendants.[3]   For example, Ms. Howell

---

[3] The jury fully credited Ms. Garcia's testimony, awarding her the full amount of damages she asserted that she was entitled to from Defendants.   The jury made this award despite the fact that Plaintiffs' counsel miscalculated the amounts due to Ms. Garcia in their closing arguments, asserting that she was owed $10,164.   The jury independently calculated the amount she was owed and awarded Ms. Garcia $10,976 in damages, which was the proper amount based on her testimony that she worked approximately 32 hours per week for 28 weeks and paid on average $160 per week in tip-in fees.

testified that she worked for Defendants for approximately 32 hours per week for 162 weeks, and that on average she paid $150 in tip-in fees per week for which she was owed reimbursement. If the jury had fully credited Ms. Howell's testimony and the time period during which she performed this work fell entirely within the statute of limitations period, she would have been owed $61,884 in damages.   The jury awarded her $55,125 in damages, meaning that the jury found her testimony largely credible, and only made a modest reduction to the amount of damages it awarded her.   On the other hand, Ms. Everett testified that she worked two different schedules at Defendants' clubs:  (1) from September 9, 2009 until September 30, 2010 (52 week period) she worked approximately 32 hours per week and paid $150 in tip-in fees per week; and (2) from October 1, 2010 until October 31, 2011 (56 week period) she worked approximately 32-33 hours per week and paid $180 in tip-in fees per week.   If the jury fully credited her testimony, she would have been owed $43,342.   The jury awarded Ms. Everett $10,764 in compensatory damages, meaning that it found her testimony only partially credible and reduced her damages accordingly.

Defendants' motion for JNOV will be denied because it asks the undersigned to re-appraise the credibility of Plaintiffs, which is not within the undersigned's purview when reviewing a motion for JNOV.   Based on the damages amounts awarded by the

jury, none of which reflected the exact amount requested by Plaintiffs, it is clear that the jury weighed all of the testimony presented by the parties to arrive at its verdict. Moreover, viewing the testimony from trial in the light most favorable to Plaintiffs, a reasonable jury could find that Plaintiffs were entitled to their respective damages amounts.

**B.   New Trial**

Defendants have moved, in the alternative, for a new trial under Federal Rule of Civil Procedure 59(a).  Under Rule 59(a), a court may weigh the evidence and consider the credibility of witnesses, and grant a new trial if:  "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."  *Cline v. Wal-Mart Stores, Inc.,* 144 F.3d 294, 301 (4th Cir. 1998) (citations omitted).  "The decision to grant or deny a new trial is within the sound discretion of the district court[.]"  *Id.*

Defendants first argue that the verdict is against the clear weight of the evidence for Plaintiffs Everett, Nelson, McFeeley, Garcia, and Howell based on the same arguments made in their JNOV motion.  Defendants' remaining arguments for granting a new trial are not based on the weight of the evidence or the giving of false evidence; rather, Defendants point to several

12

alleged errors that occurred during trial that purportedly resulted in a miscarriage of justice: (1) errors in jury instructions and verdict sheet; (2) excluding questioning on performance fees received by Plaintiffs; (3) inconsistent verdict; and (4) compromise verdict.

### 1.   Weight of the Evidence

As discussed above, the only evidence adduced at trial regarding the damages owed to Plaintiffs was testimony from Plaintiffs providing an approximation of the wages they were due, and cross-examination of Plaintiffs during which Defendants attempted to call into question the reasonableness of Plaintiffs' assertions.   Defendants also provided testimony from Uwa Offiah and Doguy Kamara.

After reviewing the testimony adduced at trial, the weight of the evidence supports the jury's damages awards for each Plaintiff.[4]

---

[4] Defendants also assert that a new trial should be granted because the verdict was inconsistent on its face because the jury awarded damages to Plaintiffs Everett and Nelson "when their uncontested testimony clearly established that they did not work at Defendants' establishment[s] during those period[.]" (ECF No. 94, at 12).

Defendants' use of the term "inconsistent verdict" is misplaced, as a verdict is only inconsistent when answers to special verdict questions are irreconcilable with each other or when special verdicts are irreconcilable with the general verdict.   Fed.R.Civ.P. 49(b)(3)-(4).   That is not the situation here, where the special verdicts returned by the jury were consistent with each other.   Defendants' argument seems to be

2.   **Miscarriage of Justice**

a.   **Jury Instructions and Verdict Sheet**

Defendants contend that a new trial should be granted because the jury instructions did not include the purpose of the FLSA, which would have assisted the jury in rendering its verdict.   Defendants also argue that a new trial should be granted because the limited amount of information on the jury verdict sheet confused the jury and did not appropriately address the legal burdens of each party.

As noted by the United States Court of Appeals for the Fourth Circuit in *Hardin v. Ski Venture, Inc.,* 50 F.3d 1291, 1293-94 (4th Cir. 1995):

> District courts are necessarily vested with a great deal of discretion in constructing the specific form and content of jury instructions.   *Price v. Glosson Motor Lines, Inc.,* 509 F.2d 1033, 1036 (4th Cir. 1975). By no means are they required to accept all the suggested instructions offered by the parties.   *See, e.g., Joy v. Bell Helicopter Textron, Inc.,* 999 F.2d 549, 556 (D.C. Cir. 1993).   So long as the charge is accurate on the law and does not confuse or mislead the jury, it is not erroneous.   *Spell v. McDaniel,* 824 F.2d 1380, 1395 (4th Cir. 1987), *cert. denied sub. nom., City of Fayetteville v. Spell,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988).   A set of legally accurate instructions that does not effectively direct a verdict for one side or the other is generally adequate.   On review,

challenging whether the weight of the evidence supports the verdicts for Plaintiffs Everett and Nelson, an argument which has already been rejected.

14

> jury instructions must also be viewed as a
> whole. *Thornhill v. Donnkenny, Inc.,* 823
> F.2d 782, 787 (4th Cir. 1987).

*Id.*

When the jury instructions and verdict sheet are considered in their entirety, neither the undersigned's refusal to include the purpose of the FLSA in the jury instructions nor the layout of the verdict sheet resulted in a miscarriage of justice. When read as a whole, the jury instructions provided an accurate overview of the legal principles at issue in the trial and were fair and balanced to both sides. In addition, the instructions provided the jury clear instructions on how it should evaluate the testimony provided by the parties and how to calculate damages. Defendants have not shown that the jury was misled or confused by the absence of the instruction on the purpose of the FLSA. Similarly, the fact that the jury asked a question during its deliberations about why it had been asked to determine the second amount on the jury form (the liquidated damages amount) (ECF No. 90, at 6), does not indicate that the verdict sheet or instructions were misleading or confusing. Rather, it shows the jury's curiosity about one of the fact-finding tasks it had been given. The undersigned adequately responded to this inquiry by informing the jury that its verdict was the first line — compensatory damages based on a three year statute of limitations under the MWHL — but that there were "aspects of the

15

case [] that the court must decide after the jury returned its verdict that would depend on the second line" — liquidated damages based on a two year statute of limitations under the FLSA. (ECF No. 90, at 8). Moreover, the damages amounts returned by the jury evidence that, despite the jury's minimal knowledge on why they were asked to perform the second liquidated damages calculation, the jurors were fully capable of complying with the instructions, as the amounts awarded reflect the jury's understanding of its task.

**b.   Exclusion of Performance Fee Testimony**

Defendants aver that they should be given a new trial because the undersigned improperly prohibited them from questioning Plaintiffs regarding performance fees, a line of questioning that purportedly would have shown that Defendants were not liable to Plaintiffs for wages because Plaintiffs were earning above minimum wage based on the performance fees they received from customers.

"Errors made in [evidentiary rulings] warrant a new trial if they constitute an abuse of discretion." *Dawson v. Page,* 286 F.Supp.2d 617, 625 (M.D.N.C. 2003) (*citing Sasaki v. Class,* 92 F.3d 232, 241 (4th Cir. 1996)).   Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than

it would be without the evidence."  Rule 402 provides that
"[a]ll relevant evidence is admissible, except as otherwise
provided by the Constitution of the United State, by Act of
Congress, by these rules, or by other rules prescribed by the
Supreme Court pursuant to statutory authority[.]"  Rule 403,
which provides for exclusion of relevant evidence on various
grounds, states that:  "[a]lthough relevant, evidence may be
excluded if its probative value is substantially outweighed by
the danger of unfair prejudice, confusion of the issues, or
misleading the jury[.]"

In the September 15, 2014 memorandum opinion and order,
Plaintiffs were denied summary judgment as to Defendants'
counterclaims for breach of contract and unjust enrichment
because there was a genuine dispute over whether the performance
fees paid to Plaintiffs constituted "service charges" under the
FLSA that could offset Defendants' statutory wage obligations.
Prior to trial, Plaintiffs filed a motion in limine requesting,
*inter alia*, exclusion under Federal Rule of Evidence Rule 403 of
any testimony or documents relating to Defendants' argument that
performance fees received by Plaintiffs were "service charges"
within the meaning of the FLSA that could be used to offset
Defendants' wage obligations.  (ECF No. 65).  A motions hearing
addressing Plaintiffs' motion in limine was held on January 20,
2015.  At this hearing, Defendants were asked what evidence they

had to show the exact amounts Plaintiffs had received in performance fees, evidence an employer must produce in order to receive an offset of its statutory wage obligations. Defendants admitted that they had only a few pages of documentation from their clubs showing the amount of performance fees received by Plaintiffs. Defendants were told that any wage offset would be limited to the amounts Defendants could actually prove had been paid to Plaintiffs.[5] Following the motions hearing, Defendants submitted documentation showing only a few days' worth of performance fees that had been paid to Plaintiffs McFeeley and Nelson; they had no evidence concerning performance fees paid to

---

[5] The undersigned did not reach the issue of whether the performance fees paid by customers to Plaintiffs constituted "service charges" under the FLSA capable of satisfying Defendants' wage obligations because, even if the performance fees were found to be "service charges," Defendants could not claim a wage offset because they did not meet their statutory obligation to keep records, and therefore, had no proof that these disputed fees had actually been paid to Plaintiffs. *See Ruffin v. Entm't of the E. Panhandle,* No. 3:11-CV-19, 2012 WL 761658, at *2-3 (N.D.W.Va. Mar. 7, 2012) (denying defendants a FLSA wage credit for the performance fees paid to plaintiff, who was an exotic dancer, because defendants had not met their burden of "proving the amount of the mandatory minimum dance fees retained by the plaintiff" seeing as they kept no records of the amounts paid to the plaintiff); *see also Morrisroe v. Goldsboro Milling Co.,* 884 F.Supp. 192 (E.D.N.C. 1994) (finding that employers could only take a boarding and lodging credit against back wages owed to employees if they complied with recordkeeping provisions in 29 § 516.27 and could prove the costs they incurred in furnishing boarding and lodging to employees); *see also* 29 C.F.R. § 516.28 (noting that for "tipped employees" an employer must keep record of, *inter alia,* the amount of tips received by the employee, the amount of wages paid to the employee, and the hours worked by the employee).

the remaining Plaintiffs.   Thereafter, Plaintiffs submitted a
supplemental motion in limine stipulating to the offset amounts
for Plaintiffs McFeeley and Nelson for which Defendants had
provided supporting documentation and renewing their request
that the court exclude at trial all testimony and documentation
relating to the performance fees Plaintiffs received while
working.  (ECF No. 74).   In response, the undersigned issued a
letter to counsel on January 29, 2015, in which Defendants were
directed to "notify the court and opposing counsel if it is
unwilling to accept Plaintiffs' most recent concession
concerning the set off.   Otherwise, the issue of serve fee
offsets does not need to be presented to the jury." (ECF No.
76).  Defendants did not respond.  Accordingly, it was assumed
that Defendants had consented to the offset concession offered
by Plaintiffs, and the offsets were reflected in the
undersigned's February 10, 2015 memorandum opinion and judgment.
(ECF Nos. 92 and 93).

Because the issue of service charge offsets was settled
prior to trial, during trial the undersigned limited Defendants'
questioning of Plaintiffs regarding the performance fees they
received.  For example, Defendants were permitted to ask general
questions about how the clubs operated, including the amounts
and processes by which customers paid Plaintiffs to perform
exotic dances.  Plaintiffs' objections to Defendants' questions

regarding the aggregate amounts Plaintiffs' "earned" in performance fees, however, were sustained, as it had already been determined that the performance fees could not offset Defendants wage obligations as either a "tip credit" or "service charge" under the FLSA due to Defendants' failure to follow the proper procedures to claim such a credit. Therefore, the undersigned determined that excluding this line of questioning was proper under Rule 403 because it unnecessarily risked confusing the jury about what constituted a wage under the FLSA and the amount of wages that were owed to Plaintiffs. For the foregoing reasons, the evidentiary rulings on performance fee testimony do not constitute an abuse of discretion entitling Defendants to a new trial.

### c.   Compromise Verdict

Defendants argue that a new trial should be granted because the jury's verdict was compromised. Defendants note that the "jury deliberated from approximately 1:00 p.m. on Thursday through 4:30 p.m. on Friday" and that around 4:30 on Friday sent a note which read "we cannot come to a decision," a statement which had been crossed out and below it was written: "we have reached a verdict but need a few minutes to reach a verdict[.]" (ECF No. 90, at 15). Defendants conclude based on this note alone that "[c]learly the jury compromised on a verdict rather than returning to deliberate on Monday." (ECF No. 94, at 12).

"[A] compromise verdict results when jurors resolve their inability to make a determination with any certainty or unanimity on the issue of liability by finding inadequate damages[;]" "an insufficient damages verdict, standing alone, [however,] does not necessarily indicate compromise." *Gries v. Zimmer, Inc.*, 940 F.2d 652, at *9 (4th Cir. 1991) (unpublished table decision) (internal quotation marks omitted) (*quoting Mekdeci By and Through Mekdeci v. Merrell Nat'l Laboratories*, 711 F.2d 1510, 1513 (11th Cir. 1983)); *see Boesing v. Spiess,* 540 F.3d 886, 889 (8th Cir. 2008) ("A compromise verdict results when the jury, unable to agree on the issue of liability, compromises that disagreement by awarding a party inadequate damages."). As noted by the Fourth Circuit in *Gries*, "[w]e have held that a new trial on all issues is necessary if the verdict could only have been a sympathy or compromise verdict . . .[b]ut where there is no substantial indication that the liability and damage issues are inextricably interwoven . . . a second trial limited to damages is entirely proper." *Id.* at *10 (internal citation and quotation marks omitted). The Fourth Circuit also indicated that the pertinent factors for assessing whether a verdict is a compromise verdict are:

> (1) clarity of the jury instructions and
> verdict form; (2) length of the jury
> deliberations; (3) strength of the evidence
> as to liability; (4) questions and notes
> from the jury during deliberations; and (5)

21

> whether the case involved a sympathetic
> plaintiff and unsympathetic defendant.

*Id.* (*quoting Spell,* 604 F.Supp. 641, 651 (E.D.N.C. 1985), *aff'd in part and vacated in part,* 824 F.2d. 1380 (4th Cir. 1987)).

There is no indication that the jury issued a compromise verdict, especially considering that liability was established before trial and the jury's verdict was rendered only on damages. The jury deliberated for a day and a half before delivering its verdict. The undersigned informed the jury via note on Friday afternoon that, if its deliberations needed to continue "for some time," it was free to adjourn for the weekend and return on Monday. (ECF No. 90, at 13). In response, the jury responded at 3:48 p.m. that it would deliberate until 4:30 p.m. and if it had not reached a verdict at that point, then it would resume deliberations on Monday at 9 a.m. (*Id.* at 14). At 4:37 p.m., the undersigned received a final note from the jury indicating that it had "reached a verdict but need[ed] a few minutes to reach a verdict" suggesting that it had reached an agreement but needed a few additional minutes to fill out the verdict sheet or finish calculating the damages amounts. (ECF No. 90, at 15). Simply because the jury's verdict was rendered on a Friday afternoon and its note from earlier in the day indicated that it had not yet reached a verdict, does not indicate that when the jury finally arrived at damages amounts

22

for each Plaintiff that it was the result of compromise or haste. *See Gries,* 940 F.2d at *10 ("We do not believe that the mere fact that a verdict is handed down on a Friday afternoon means that it is, *per se*, a compromise verdict."). Moreover, the damages amounts themselves are not indicative of compromise. As discussed above, the damages amounts reflect that the jury took into consideration all of the testimony it heard to arrive at Plaintiffs' damages amounts. *Cf*. *Nat'l Fire Ins. Co. of Hartford v. Great Lakes Warehouse Corp.,* 261 F.2d 35, 37 (7th Cir. 1958) (finding it was not "a mere coincidence" but rather a compromise verdict where the jury awarded one-half of the amount of loss as established by the undisputed evidence).

## III. Conclusion

For the foregoing reasons, the motion for judgment notwithstanding the verdict, or in the alternative, for a new trial filed by Defendants will be denied. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge